22-16-24 Hadwan v. Department of State Ms. Goldberg. Thank you. Ms. Goldberg whenever you're ready. I'm sorry you need to put on the microphone. I forgot to have headphones. Give me a minute. Let me see what I can adjust. I've done my other arguments so. Okay, why don't we just proceed. Would you like me to see if I can work something out? Well, do the best you can. I mean, we'd like to hear your argument. We haven't heard any arguments from you at any point, so try to make some arguments. Yes, go ahead. Okay, give me one second. I'm going to grab something to see if this will work. Okay, can you hear me better now? Yes. Yes, thank you. Okay. So to please the court, Mr. Hadwan was a U.S. citizen at birth, residing in the United States beginning on about his 10th birthday. He was adopted in the U.S. in his adulthood until 2013. When he attempted to go overseas and apply for benefit for his family, his passport was confiscated, thereby trapping him overseas and repeatedly denying his request for a limited validity passport. He lost his home, his business, access to sea, and reside to his family. His court and I have repeatedly ruled that the actions of David Howell and the Sonata MC employees were unlawful and lacked due process. Counsel, counsel, I understand you now to be saying that somehow the fact that he was not allowed to be at the hearing, which decided whether his request was a violation of procedural due process, but did you make that argument at any point before and did you make it to a district court? And if you did not, is this something that is sufficiently significant that we should do something even though it was never raised? Your Honor, I disagree that it was not raised. The first amended complaint accounts 3, 5, and 6. And most importantly, the amended complaint at count 6 raised the issue that the hearing violated 5 U.S.C. 554, which raises all the specifics that we discussed in the summary judgment motion. So first of all, if we look at that statute, it specifically prescribes that the hearing, the meeting, and the time and place of the hearing shall be capped for the convenience, if necessary, of the parties and their representatives, and especially if the parties are private parties. I'm sorry, so is your argument that the agency was required to grant HOD 101-way passport? Yes, it is. Okay, and that's required because of due process or statutory or both? Both. But also, beyond just his presence, okay, it's not just that his presence. But why do you have to go so far? Why don't you have to say only that they had to have a hearing at which he could be present, whether that involved granting a passport or whether it involved having a hearing in some unlikely place, but that somehow a hearing at which somebody is arguing for a removal of their passport and citizenship, and in fact, without that person there, is not a valid hearing. Now the problem is he did have a lawyer. So both his lawyer, previous, and my office raised that issue. In fact, his lawyer tried to get a continuance, which was required by Section 5 U.S.C. 544, which is what we brought up in Count 6, and his lawyer attempted to get a continuance that said, look, not only is he not present, the worst of the war is going on. All communications have been shut down over time. I can't even get a document. An attorney booted. Can I ask you this, Ms. Goldberg? So the lawyer at that time couldn't be in touch with Mr. Hadjwan, but have you been in touch with Mr. Hadjwan? I have. I actually have an office in Djibouti, and I'm frequently in and out. Okay, so you've been in touch with Mr. Hadjwan this time. It's been 10 years since the revocation, right? At the hearing, Mr. Hadjwan's lawyer said that there should have been a DNA test to test his parentage, and it's now been 10 years, and the State Department has said that they would entertain and facilitate a DNA test at any time, so why hasn't he provided that test? Why hasn't he sought to do that? First of all, the embassy in Yemen is closed, and that's a whole other issue. The DNA has to be requested by the government. In fact, I can quote something for you. Honorable Matthew Kennedy of Chicago and the U.S. District Court of Illinois specifically discussed the problem with the government not taking DNA, and in fact he said, I mean, that just arbitrary and capricious doesn't quite capture it. I might state legally illegitimate if I could borrow some language from another decision. He went around to talk about the fact that you cannot get DNA without the government's permission, and he talked about the issue with getting DNA even if my client is willing to fly to a completely different country to get the DNA. Just to be clear, you're saying that Mr. Hadjwan is willing to do a DNA test to establish his paternity or his parentage, but that the government isn't allowing it or the government has made it too complicated? Is that what you're saying? Yes, and if you look at the hearing notice, if you look at what occurred in the transcript, the previous counsel said, I'd like to get DNA, and the hearing officer said, I don't want to answer you on that, and he went on to basically say he couldn't do that. OK, OK, we'll hear from the government about that. Can I ask you, the other problem that your client faces is that the only evidence in the record is the statement that he signed in Yemen that he had obtained the documents fraudulently. He's never submitted just an affidavit saying that that is not correct. Again, it's been ten years. Why hasn't Hadjwan submitted any evidence or come forward with any evidence that the sworn statement was in fact incorrect? That's not accurate. The evidence that we attached in our complaint had that sworn statement, and that was the issue as to whether what was reviewable by the district court, and that was one of the issues in the lower court, was what exactly was reviewable, including the fact that one of our arguments is if the hearing was going to follow due process, the original hearing, What did you precisely argue to the lower court, to the district court? I mean, let's just for a moment say there may have been any number of things that were wrong earlier. What did you argue to the district court, and what did you not argue to the district court? If I may, Your Honor, I do want to let you know that I'm out of time. Am I okay to continue? It's okay. You can proceed. Okay. So one of the other issues is that we had filed, obviously, the conviction motion because we were without a lot of evidence that we're required to move forward. Unfortunately, Judge Powell had passed away, so our previous plan didn't take place. And so one of the issues that we had is when our conviction motion was denied for required evidence, the court did not allow us to present our own summary judgment motion. He immediately had set a briefing schedule and said that the government was going to refile the previous summary judgment motion and we were going to respond to the plot. So where previously, when it was before Judge Powell, the plan had backed that we had a date to submit our summary judgment motion that went away after our motion for discovery, limited discovery, was denied. Can I ask what you think we have the authority to do? Do we have the power to direct the State Department to issue a 101-way passport? Yes, I do, and for two reasons. Number one, under 22 U.S.C. 27005, the following documents shall have the same force and effect as United States citizenship. A passport in its validity, which he doesn't have, or a CRIBA certificate. And he does have a CRIBA certificate. And at this point, the standard and the burden should shift that the government needs to prove citizenship by clear and equitable conviction evidence. And part of that requires him being allowed to come in, be at the hearing, present the DNA, all the stuff that his previous lawyer was not able to present at the time, at the height of the war. I'm sorry, what requires that? So he had a hearing that he knew about in advance, and he had a lawyer representing him at the hearing. What are you saying? What source of law requires him to be present at the hearing if they allow him to have a lawyer? The hearing was fatally flawed. His lawyer asked to continue it. Okay, so the problem is not that he wasn't present at the hearing. The problem is the denial of the continuance. Is that the argument? Well, there's several. The denial of the continuance, failure to allow him an opportunity to submit additional evidence. That's him not also being allowed at the hearing. So what is the additional evidence that he wanted to submit that he couldn't submit? Well, first of all, listen, I'm not going to tell you whether Mr. Headwatch should have his passport revoked without a proper and fair hearing. But what I do know is the United States is represented to the world that we're a society of rules that creates fairness and opportunity. You're going to have to slow down, Ms. Goldberg. I can't hear you. Okay, and an opportunity to be heard. And if our own leaders and governments do not follow the rules, who should? It's absolutely clear that there are issues with these statements of receipt. He was trapped in a room. There are multiple plaintiffs. He was given no food, no water, no bathroom. Okay, my question was what we have the authority to do. Do we have the authority to direct the State Department to issue a one-way passport and then Judge Menasche asked as a follow-up what would be the basis for doing so, being that he had a hearing with a lawyer present? So you have two questions. It would be very helpful for me to get the source of law suggesting why we could direct the State Department to issue a one-way passport. And then the next question was, again, and why does he have to be there if he has a lawyer already there? Okay, first of all, this court could reverence and find that he violated the EPA, that it was arbitrary and capricious, and that they violated due process and amendment concerns. In doing so, it puts him back in the situation he was prior to the hearing, and under the Code section, this court can order him to issue a one-way travel document like everybody else. Why do you need to go so far? Why don't you say that we have the right to say to the government that it must find a way to let somebody in situations of this sort be present at an argument on the removal of passport and citizenship, when that person says, in effect, my lawyer does not know enough, and therefore I have to be present? It doesn't require the government to give a one-way passport. They may have to do it someplace else rather than in the United States. A one-way passport is one way of doing it. But do we have the authority to say, when somebody says, I cannot make this argument in the situation I am in, and you government could perfectly well make it be possible for me to be there, you have a duty to do that. Giving a one-way passport is one way of doing it, but even doing it in Yemen. Now, it may be that Yemen is impossible because of war, but it may be someplace nearby. Or isn't it at least plausible that such an argument could be made? I would agree, and if the government would like to conduct this hearing in Yemen, I am frequently an added, and I am happy to hold this hearing there. But I don't see the realistic – the idea that the government is willing to go to Yemen and hold an actual hearing is probably pretty improbable. But other than that, I'm happy to give them an added and holding hearing. Can I ask what Mr. Hadwan has been doing for the last 10 years? Has he reapplied for a passport or any documents? You said it's difficult to submit a DNA sample. Has he tried to do that, contacting the government? Yeah, he's applied several times, and it's repeatedly denied. I'm sorry, I couldn't hear you. You said he applied several times and was denied? Yes. So he did do something in these 10 years, but did they treat this as essentially decided, as res judicata or something of that sort? Yeah, so he tried all the way through 2014 to go into this non-empathy DNA that his attorney had recommended, but that was right when the war broke out. I believe in 2015 and 2016, I would have to check my records. He came over to my office and he attempted to apply again. So there has been a few. I've emailed the embassy and the State Department as part of a settlement multiple times saying, Please let him have a one-way passport. Allow him to come in. Let's do DNA. Let's keep him here hearing. That is a pretty critical condition for him, and I've asked repeatedly to have that done. So can you move on to the due process right about not signing the statement knowingly? Yeah, so there were several issues with the statement. First of all, I would like to say that this is by the case in all of these. I've seen probably over 50 of these states for a state issue, and if you look at the statement, the only thing that's signed by him is the fourth page. And ironically, it's signed by the very name that he says is his name, which is Monsure Hadlam. The other thing is the three pages that allegedly is signed, that he read, have the initials. And I want the court to notice that the handwriting in the initials is completely different than his signature. The handwriting in the initials appear to be done by someone who is left-handed because the way the ages are. And if you look at his signature, he appears to be right-handed the way it's signed. And this is the case every one of these statements. OK, I'm sorry. So there I understood you making two Fifth Amendment rights based on the two Fifth Amendment arguments based on the statement. One was that he didn't sign it knowingly, and that was because, like, the supposed interpreter was an interrogator and he didn't understand that what he signed at the embassy. The second one was that he did it not voluntarily because he was left in a room without food or water or bathroom access. You're now saying that it was fraudulent. Is that right? What I'm saying is he didn't see the first three pages. I'm sorry. Did not see the first three pages. OK, so is there something in the record that tells us that he didn't see the first two pages or we're supposed to infer that from the handwriting? I mean, why, if it's a motion for summary judgment, was there not an affidavit from Mr. Hadwon that says I didn't see the first two pages and this is what happened when they asked me to sign it? In fact, the only evidence in the record is the statement itself, right? Well, there was a statement – there was an affidavit given with the original filing of the complaint. But beyond that, there's a statement by him that specifically discussed the fact that only – that he was told if you sign this paper, give me your passport back, your kids will go to the U.S. and it's no problem. And that was after 10 hours of being stuck in a room. So I thought that account was what his brother said that he had told him and it was relayed to the hearing officer. Is there a sworn statement from Mr. Hadwon that says that that's what happened? And if so, where can I find it in the record? That was in the original – the evidence that was attached to the original complaint. OK, I will take a look. Thank you. OK, Mr. Goldberg, you've reserved – do you have more questions? OK, you've reserved time for rebuttal, so we'll hear from you again. But let's turn to the government. Mr. Sun. Mr. Sun. Good afternoon, Your Honors. May it please the Court. Anthony Sun from the U.S. – Speak right into the microphone. Of course, Your Honor. Anthony Sun from the U.S. Attorney's Office for the Southern District of New York on behalf of the government. The Court should affirm the judgment because the decision to revoke Mr. Hadwon's CRBA and passport satisfied the APA. It was neither arbitrary nor capricious. Can you tell me how this case is different from the other cases in Yemen involving David Howell in 2013? It's different in a number of key factors, Your Honor. Perhaps the most relevant one in terms of circuit case law is that al-Zaqqari was a case involving a naturalized citizen, whereas naturalization is not what Mr. Hadwon claims. But that has nothing to do with the procedures that were used. That has to do with the penalty that was imposed. But that case – So is that the best you got for why it's different? What else do you have? What else is different, Your Honor, is that, quite frankly, Mr. Hadwon has not timely or consistently pursued his various constantly shifting arguments at the various levels of litigation. Well, let's go back to the al-Zaqqari. I mean the holding of al-Zaqqari was it's not fraudulent if you write on your documents the name that was used to naturalize you. That's contorting your naturalization documents. Mr. Hadwon doesn't have that kind of argument here, right? Because here the revocation is based on more than his use of a particular name in applying for the documents. It's based on his sworn statement that – or it's the signed statement that he obtained the documents fraudulently, right? Yes, Your Honor, and that is the key distinction here as well. This is an APA case, and the record contains essentially one piece of evidence, the sworn statement. Right, so the record contains the statement, and I've just asked Mr. Hadwon's counsel why didn't Mr. Hadwon submit a sworn statement saying that this account was not correct or that he did not know what he was signing. And she says that there was a sworn statement attached to the complaint. Is that true? I actually do not know, Your Honor. The operative complaint in this action is a third amended complaint, and there was no affidavit as a whole. As far as you know, the only evidence that has been submitted is this, and Mr. Hadwon has not submitted an affidavit and has not done the DNA test. Is that right? Correct, Your Honor. So now we have this question about the government says that it's willing to facilitate and consider a DNA test at any time, right? Yes, Your Honor. Has he tried to do that? The State Department is not aware of any attempts, Your Honor. And may I just clarify that as well? In addition to facilitating in the context of this case, Mr. Hadwon is not barred from further applications either to the State Department for a passport where he can submit DNA- At which I was present and able to be present and adequately represented. And because of that, I was not able to make out the argument that what I signed was not so, that the government will not argue that that is barred. I'm not quite sure what you're arguing is barred, so let me try to answer your question this way. Here is my point. I agree with you that none of these things have been made by Mr. Hadwon. On the other hand, it is also the case that the government took away this person's passport and certificate of being born a citizen in a hearing at which he asked to be present and he was not allowed to be present. So my question is, is that an issue? That whether that kind of a hearing is sufficient for procedural due process that is still open either for us or for Mr. Hardwick to raise at some point. I will attempt to answer your honest question this way, which is, if in a hypothetical future application to the State Department or to USCIS, which would be for a certificate of citizenship, he can submit whatever evidence he sees fit to explain the statement that is in the record, to explain, to provide other evidence, perhaps DNA evidence from his father, and to explain the circumstances. If the government then takes the position that this has already been settled because it has gone through all the courts, then what you're saying is meaningless. I want to know whether this person had or has still a right to make an argument that has to this point not been made and which is fundamental. Your Honor, I've consulted with the State Department and the answer is on a new application they will look to it with fresh eyes and the prior affidavit is not preclusive. That said, it is going to be evidence of record and it will be considered accordingly by the State Department, but it is not preclusive in the sense of a stop-all. So you're saying that if Mr. Hadron comes in or submits a new application for a passport or a report of birth abroad or whatever documents he's seeking, and he submits an affidavit that says, actually, my original account of who my birth parents were was correct. The statement in Yemen was not notably signed and here's DNA evidence to the extent that he can provide that. The State Department would consider that anew and not say we've already considered this and denied. You consider that evidence when he submits it. Correct. It will be looked upon with fresh eyes. Again, to be clear, the prior- And you are saying that to this court that he can do that? Yes. He can, Your Honor. Okay. I want to know why we're even – well, I think that's a little cart before the horse. I mean, we were talking about whether or not his passport was appropriately revoked. And putting the burden on him to go and reprove something that is proven is not something that, at this point, you persuaded me of. But I want to ask about this hard policy of only requesting one continuance. Where is that? Your Honor, I only have what's in the record, and so- Okay. But there's no State Department rule somewhere that you can point to that says we actually have a hard policy of only allowing one continuance? So I cannot point to a rule. I can only point, Your Honor, to what we put in our brief, which is the regulation- Which is that somebody supposedly told somebody else that there was a hard policy. Well, further, that the regulation in effect at the time required the consent of both the State Department and the hearing officer, and the State Department did not consent. Okay. But the State Department did not – does not have a piece of paper that says we have a hard policy where we only do X, right? You cannot point to me an internal rule, a governing memo, anything like that? I have nothing in the record to point you to, Your Honor. Okay. The next question I wanted to ask was why do – why is it the government's – I mean, let me start over. It seems to me that throughout the Fifth Amendment right about the statement violating his rights because it wasn't done knowingly or voluntarily was actually raised throughout. I see it in the agency hearing where he said that Hodwin did not read or write English and there's no affirmation from the translator in the record. I see it in the operative complaint where he said the interpreter acted as an interrogator and that he didn't make the statements knowingly and intelligently. I see it in the summary judgment briefing where he said that he didn't give the statements voluntarily. I see it in the appellate briefing. So this was an argument that was not waived. I would – I feel like I can also go through that very clearly with the fact that he didn't sign it voluntarily. So I'm hoping you'll spend a few moments why that is not enough to provide him some relief from this court. Certainly, Your Honor. Two points. I want to distinguish between voluntariness – And knowing. Sure. Well, and actually the argument that was separately, in our view, forfeited about inconsistencies on the face of the document. I'm having trouble hearing you. I was distinguishing between voluntariness and the argument that the document is inconsistent on its face. So you're making the distinction – so I guess we can make three distinctions. Voluntary, knowing, we're putting them on one side, and then the third is the potentially forged. Is that what you're saying is the – I don't know if forged is the word I would use. I think the argument they have raised is that it's inconsistent on its face. Okay. Okay. So go ahead. So, Your Honor, you're right that that was raised and it was considered by the adjudicator. And while reasonable minds may disagree, the review here is for arbitrary and capricious. And it's not arbitrary and capricious for the hearing officer to have considered those arguments and concluded, nevertheless, the evidence I have in front of me – Why would somebody trying to get a passport for their kid and their wife voluntarily say, I lied about my parentage, and please take my passport, and I'm letting you do that? I would only be speculating, but in the face of evidence or someone can have – Okay, but now it's circular, right? It's not evidence if he's saying he didn't knowing – you're saying the thing that makes it evidence is something that he's saying he didn't knowing and knowing and voluntarily sign. And you can't give me a reason as to why he would sign it. They said that they – he only signed the fourth page and he didn't see it. And also he was not in a position where he could argue very well because he was being deprived and he didn't have an interpreter. What is your reason? Why would he have signed it? Your Honor, on the face of the document, he signed it, and the hearing officer was entitled to rely on the fact that it was a sworn statement. Yeah, but I think the question is why is it – do we know anything about the circumstances for which he signed it? Was there an investigation of him? I mean, there are a lot of details about his family members. Your Honor, that's not in the record. So we don't know. So it might be that he just walked in to conduct business at the embassy and they presented him with this document and he signed it. That is – Do you acknowledge that it is weird if that's what happened, right? It seems implausible that somebody would just do that. I don't know if it's implausible, Your Honor. I will say that, again, all we have on the record is that there was an affidavit that was prepared and was read to – But your argument here is since we're evaluating the legality of what the hearing officer did, the hearing officer has this side statement from him that says he committed fraud in obtaining the documents, and he has not submitted evidence on the other side. And so there is just no – like it's just the evidence just weighs in favor of what the hearing officer said. Correct, especially since he, through counsel, was given an opportunity to submit written materials. The counsel – his administrative hearing counsel confirmed that there was nothing else to submit. Counsel, do you concede that there has never been a hearing at which these issues have been discussed and argued with the person present and with adequate counsel? Now, I'm not saying that that is needed, and it may be that what you have said about the openness of the State Department to do it would meet it. But you concede that these questions that we have been asked have never – perhaps through the fault of Mr. Hedlund and his counsel, perhaps through the fault of the government, that somehow this hearing on what really has happened has never taken place in a way that we would normally think of being procedurally adequate. Your Honor, in your question you, I believe, implied that counsel – administrative counsel was inadequate, and I don't know that we can come to that conclusion. We can't even – we don't know. He said, I never saw him, I never spoke to him. We don't know why. We don't know. We know that he asked to be there and that his counsel then said, I know nothing. On the other hand, he was his counsel. I mean, this is what makes the case so bizarre. Normally, when you have counsel, you can rely on counsel. This guy is saying, I have to be there, and counsel then goes and says, I don't know beans. Your Honor, administrative counsel never actually made a request for a one-way passport for Mr. Hedlund to appear there either. Counsel didn't. He did. That's not in the record, Your Honor. There's no request for a one-way passport in the record. In fact, that's not even alleged in the complaint, the operative complaint that he requested a one-way passport prior to the hearing. So that – That's being said to us. It's being represented, I imagine, by opposing counsel, but there's nothing in the record to substantiate that. And this is not a motion to dismiss scenario. This is summary judgment on the record. Okay. If it were true, would it be a problem? If it were true that he had inadequate counsel and – No, no, no. I mean, if he's denied the passport to – The one-way passport. The one-way passport to attend the hearing. Your Honor, I don't know if I can make a blanket statement that it would be a due process violation. Certainly, there – But you haven't answered my question as to whether a hearing of the sort that I described was ever held. And you're arguing maybe it wasn't held because he didn't ask for it. But my question was, was a hearing of the sort that we would normally think of. And as I said, I don't know whose fault that was or whether it was everybody's fault. But I'm troubled as somebody who believes that due process requires hearings in a situation where there are all sorts of issues and I don't see a hearing. And then I wonder whose fault it was. And the presiding judge has given you plenty of reasons for thinking that it was – had was fault. There are reasons for thinking the other way. But I'm still troubled by this absence. Your Honor, this is the hearing that was held. There were no other hearings of record that we can discuss at this point. You acknowledge that there – to the extent that he does believe – his argument is that he didn't sign the thing knowingly or was only presented with the fourth page of it or whatever. There hasn't been an evidentiary inquiry into that question because he never submitted some evidence saying or even swearing that that's what happened. The only evidence before the hearing officer and then before the district court was the signed statement. Yes, Your Honor. His administrative counsel did raise the question of – But he had the opportunity to say that at the hearing and before the district court. His administrative counsel did in fact argue voluntariness at the administrative hearing just without evidence. Right. They argued that, but the hearing officer says because the only evidence I have is the sworn statement and I have to rely on the sworn statement, right? I don't think the hearing officer said they have to rely on it. It doesn't have to, but that's the only evidence – that was the only evidence on the record.  But did I understand you earlier to say that the government is conceding that the State Department would, if he asked now for a hearing of this sort, that such a hearing would be given and that we would then find out what happened now? It might be that at such a hearing they would find that he had asked for it or had not asked for it and so on, but that it would not be res judicata on the fact that his passport was taken away and so on. Your Honor, not quite. And if you give me a bit of latitude to explain, it's not that we will convene a new hearing, but rather on a new application. Again, there's two possibilities. He could apply to the State Department for a passport or he can apply to the United States Citizenship and Immigration Services for a certificate of citizenship. And he can make that application, he can submit whatever evidence, and if he gets a favorable outcome, then this is over. But my question is, in those applications, what happens to all of this stuff that we have more or less before us? Does that borrow it or is that something that… He can present whatever evidence and he will not be precluded from arguing that the statement was not voluntary, etc. In terms of whether it gets to… Your Honor was asking about a hearing. A hearing is not necessarily the way that's resolved initially. Now, if he gets an adverse decision, he could convene a hearing under the appropriate laws and regulations. For example, in the case of a request to the USAS for a certificate of citizenship, my understanding is that if he is unsuccessful, he can bring a challenge in district court for that. Right. Your position is not that he gets to redo this hearing. It's that he can submit a new application with all the new evidence and the State Department would consider that evidence afresh. There's no res judicata doctrine in considering passport applications. Correct. I'm going to ask… And it seems if he actually had DNA evidence that showed that – who his father was, that his father was the person originally identified and not the person in the signed statement, that would be dispositive, right? I don't want to prejudge an administrative process, but it certainly would be extremely persuasive evidence of it. And just, again, to answer Your Honor's question, in terms of DNA evidence, the State Department website provides a procedure for submitting it, and it doesn't necessarily have to be done in Yemen. There are procedures… I'm going to ask opposing counsel if that is in fact the situation, and we were to hold that that can be done because of that, what objection she has to that happening? And, Your Honor, again, as an officer of the court in consultation with the State Department, I can say a new application will be looked upon with fresh eyes, and he'll be provided the opportunity to submit the evidence to overcome it. It will not be preclusive. But, again, to be clear, it will still – that document exists, and there needs to be an explanation for it. Well, of course that document exists, and then there are the questions about whether that document is plausible and whether there was a continuance. All those things would then be presumably brought up in an appropriate hearing. Ultimately, yes. We have these other cases involving similar statements where Agent Howell was involved. There was an investigation, I guess, reference to an IG report in the record. Does the government have concerns about whether the statement was genuine? I guess I have a couple of responses, Your Honor. I'm not mentioning any particular officers by name, so I can't tell you today whether that involved Special Agent Howell. In terms of this particular case, that postdates the adjudication in this case. I believe the complaint that initiated the OIG report was in January 2016, so after the adjudication in this matter. Moreover, there was no evidence in the record before the hearing officer about any issues with – No, I know. I understand. You can still argue regardless of whether it was authentic or not that it was the only evidence before the hearing officer, and therefore the hearing officer's decision was not arbitrary and capricious. I guess I'm just asking generally because we have these other cases whether the government thinks there's reason to be concerned that the statement was not authentic. I understand, Your Honor. All I can say is that the State Department cannot discuss any theoretical investigation, discipline, or other personnel matters in this particular forum. To be clear, I am not personally aware whether there was any personnel investigation. All right. Can I ask again about the continuance question? So you said the policy at the time was that both parties had to consent, the government as well as the applicants, right? The regulation. The regulation said that at the time. So even if there wasn't a policy codified in regulation somewhere that you could only have one continuance, it could be the State Department just decided we're only going to consent to one continuance, and that was the hard policy. The State Department did not consent in this case? Even if there wasn't a regulation that constrained them, they were entitled just not to consent to more than one continuance. That was our position, Your Honor. Yeah, I mean, the problem is that, of course, both would have to consent, and they might not consent. But if they didn't consent based on the wrong information, that is not the same as they're saying they didn't consent. That is, had they known that they didn't need to and decided not to grant, that's one thing. If they thought they needed not to and decided for that reason not to grant, then that would be a mistake. And we have cases in other situations where something is discretionary, but where the discretion is based on a wrong matter of law, we still reverse and say use your discretion. There's an opinion by Judge Winter in that case of that sort. So two responses, Your Honor. First, as we put forth in our brief and I'll reiterate, the continuance question was waived at at least one, I think two places along the way. But more importantly, if you look at the administrative record in this case, the specific timing, prior to any invocation of a policy, the State Department attorney told Mr. Baker, Mr. Hadwan's administrative attorney, that State would not consent. Beyond that, in terms of invocation of the policy in the e-mail to the hearing officer, all I have, Your Honor, is the same record that is before the court. So from the perspective of the hearing officer, it doesn't matter whether it's a policy or not, because the hearing officer just needs consent from both parties and didn't have it, right? So it couldn't grant the continuance. The regulation actually says the consent of the State Department and the hearing officer.  She said she wanted to, but it was represented to her that it was a hard policy. Correct. So the document- So if she had not been browbeaten into being told that it was a hard policy, she would have given it. That's what her- Except that the State Department also would need to consent, and the assigned attorney representing the State Department in the hearing did not consent. Is there any evidence that the State Department didn't do that because the hearing officer thought that it would? But it didn't need to reach the State Department because it says that in the hearing officer, and the hearing officer had said no. So as far as the State Department is concerned, it didn't need to make a decision at all. The State Department had not said no, right? I'm sorry, the hearing officer had not said no. The hearing officer wanted to grant the continuance, and it's the State Department that did not consent. Correct. And the question is whether the State Department lawyer was mistaken about whether there was a so-called hard policy or not. But that might have just been a policy within the State Department that wouldn't consent to more than one continuance, right? All we have is a record before, an administrative record, and so what we know is that the State Department attorney did not tell Mr. Baker that she would not consent, and she invoked a policy, a one continuance policy in her communications with the hearing officer, and that the regulation at the time required the consent of the State Department and the hearing officer. That's what we have in the record. But regardless of whether the State Department is making a mistake about what the policies of the State Department are, from the perspective of the hearing officer, the hearing officer needs the consent of the State Department to not have it. Correct. Okay. Thank you. Thank you very much, Mr. Sun. We'll turn back to Ms. Goldberg on rebuttal. Now, let me ask you directly. If we were to hold that hearing what we have heard, a hearing and application can be made, and in an application, your client can make all the arguments that you are saying were not adequately made, that those arguments would be heard without being barred, that what is in the record is in the record, but that there would be no res judicata with respect to these, so that these arguments with no affidavits, would that be acceptable to you? Well, first of all, that's not true, because he's already made those applications in 2015 and 2016, and they haven't been sued. And he went forth, and not only did he go forth, but he went forth with evidence in other cases, and he was denied twice, both the past four years. But you're not answering my question. My question is, if we were to hold that the State Department, that we understand that the State Department will grant a full hearing on this, with what is on the record, but giving you opportunity to bring in whatever evidence you have, that what is on the record is fallacious, either arbitrary, or non-consensual, or mistaken, but that that will be heard, is that acceptable to you? As long as that hearing is to take place in either Yemen or the United States, so that we can acquire the documents that are needed. And may I bring up four points? Please. First of all, I wanted to state that what I think about the attorney voting benign safety with a hard and fast rule is that at the same time that she said that to the hearing officer, she was in the Ninth Circuit on the Omar case, explaining that she did not get evidence from Yemen, and complaining about the very problem, she refused to make a statement to the hearing officer. Second of all, attached to the Third Amendment complaint in the OIP report, part one, and it's been confirmed, is number 31. Which also, with additional evidence, led me towards the fact that the statement, due process was not followed, and that there were issues with it, and it's listed as number 31. And in that, and that was our biggest issue of the administrative record not being complete, is that the documents that were before the revocation officer, Howell, should have been included in the record. It would have also included all of Hadmon's emails to the embassy, asking for his passport, asking for a one-way validity passport, asking to come back both during the revocation notice and the nine months they had his passport and didn't notify him. The other thing is, is that he is now stopped from, yes, he can put, he can do another passport application, and he can submit DNA. Why do you say he is stopped? I heard the government take a different, say the opposite. And that's why I keep asking, if he is not esteemed, but can ask for the kind of hearing that you say that he was denied, why is that, if we are to take the government at their word, not sufficient to have you make the arguments that you say you were not able to make? Because he has already had a hearing, Your Honor, and there is no statute. You're not answering my question. My question is, since you are claiming that the previous hearings were inadequate, and the government says you can come in and ask for everything, including showing that they were inadequate, why doesn't that satisfy you? That's not what the government is saying.  You're saying the government here before us is lying. And frankly, I'm not prepared to say that the government before us is lying. I think what you're saying is... That's not what I heard from the government. The government said he could go make a passport application at the embassy, and at that point he could present evidence. The government did not say, respectfully so, Your Honor, that he could have another hearing. In fact, the government said he could make a passport application... So that's right. So we clarified that. So the government's position is he doesn't get to redo this hearing, but he could submit a new application and follow all the procedures for that, and they will consider with fresh eyes. And if it's denied, there might be some ability to obtain a hearing of that denial. And so I guess Judge Calabrese's question is why is that not adequate for Mr. Hadlon? Mr. Hadlon makes a fourth passport application because he's already done two which have been denied. He then will have to go back to district court on a third, which in this case will be restricted on that application. And all of these issues that were raised before have now been closed. Okay. Thank you. Okay. Your Honor, can I address one more point? Sure. One more point. Okay. The issue with the DNA is that I have several of these cases. And in Washington, I actually have DNA from a sibling, and I submitted this to the state department. And the government in that case is refusing to accept the DNA unless it is collected specifically at one of their collection places overseas, which can only be acquired under various circumstances as the embassy cannot allow for that DNA, and it's not that we haven't tried. And to mention this child that is U.S. citizenship at 10 years old, the idea that a 10-year-old committed fraud and would have to continuously prove his citizenship, banished to the point overseas, is just beyond debate, let alone legal. Why? I'm not sure I heard you. But why, if he applies for a passport and citizenship, and in that submits DNA of somebody who was clearly a citizen, and the government then, despite what it has said to us here, says, sorry, we took it away before, why wouldn't that be manifestly arbitrary and capricious, or against what the government has said to us now? If there were direct evidence of citizenship, I would have thought, given what they've said to us now, they would have to listen, and there would be an appeal to a district court, saying that this violated what they said they would do. And should this court be supporting people trapped overseas, stripped of their U.S. citizenship, without any due process, no right, no hearing, and say, well, it's okay, you can keep going around the world and lose all of your business and your right to your family, and any sort of legal requirements, and you can always, at some point in the future, reapply and incur thousands of dollars of legal costs and bring another district court lawsuit if the government denies it. He should have had a fair hearing to begin with, and the idea that the government can just flatly not follow any rules, any regulations, any due process, like the wild, wild west, and trap people overseas, and the correct measure for that is, well, guess what? If you don't like the result, you don't like the result of the hearing, and you didn't do due process, you can do the process all over again, and then you can go back to the district court. It doesn't have to be what the law prescribes. Okay, I think we have that argument. Thank you very much. Ms. Goldberg, the case is submitted.